Move on to our next case set for argument, United States v. Espinoza, case number 22-30154. Good morning, may it please the court. My name is Nancy Schwartz and I represent the appellant, Mr. Eric Espinoza. I am respectfully asking this court today to find that there is no detrimental to an ongoing investigation exception to the Fourth Amendment protections, which requires that a neutral and detached magistrate constitutionally evaluate whether or not the affidavit contains probable cause and not act as a rubber stamp for law enforcement engaged in the competitive process of ferreting out crime. Basically, your position is there is no probable cause for the warrant to search the house, correct? That's correct. And I'm thinking the argument is that in your view, the warrant application had to contain some identifying information for the people who are supplying the information? It didn't necessarily have to contain identifying information of the sources of information. The warrant was very vague. It first described a group of people that were the source of information. And then when it came to the specific tip about this person arriving in Billings, it was just one source of information. It didn't provide the basis of that person's knowledge. It didn't provide whether or not that person had previously provided reliable information. It didn't do all of the things that are required in order to be able to properly evaluate that there's more information that would have permitted, at least supported, the search warrant. And the search warrant, as I looked at it, was to search the house and not specifically with respect to Mr. Espinoza, although the application very much describes him. And what we know about Mr. Espinoza, he was observed doing a sale of drugs. He was observed going to and from, unlocking the door and letting himself in. And this is a place where we know, or at least there's some strong reason to think, that we're dealing with drug dealers with some sort of an organization. That's not enough? Okay, unpacking that a little bit, as to Mr. Espinoza, the information that they had about him was just that a man had arrived in Billings. They didn't really provide more information about that. As to the house itself, what they knew was that supposedly the group was using this house. However, they didn't provide any information about the ownership of this house or any... They had conducted drug transactions with the prior people who had been in the house, who were there for a time, and then left. And what they represented was their understanding is that it was being used by different people coming in and out. So they actually do drug transactions with them, and then Espinoza shows up as the next person there. And then they see him do a suspicious transaction, not with them, so it's not quite the same. But why isn't that enough? They've tied him to the house, to the activity, and that's enough for probable cause. Because when they don't provide more information about this house, they didn't observe more than one transaction. What they were tracked back to the house. There wasn't any information about where those two individuals came from in the first place. Did they come from another source, where they could have gotten those drugs? There wasn't enough tying it into that apartment. I mean, the assumption was that all of this took place, but the officer didn't put any of that in his affidavit. The district court determined that there was a pattern matched by Mr. Espinoza that matched the drug, but when you unpack that, there wasn't really a pattern. Again, there was only one controlled buy, where those two individuals were traced back to that apartment. And then it was the second buy with Mr. Espinoza, correct? Well, the second buy with Mr. Espinoza, again, that was very interesting, too, because what there was was supposedly a suspected drug transaction, but all that the officer put in his affidavit was that it was a brief duration with someone who was a known drug trafficker. And if you look back to Underwood, for instance, in that case, there was far more Underwood was believed to be a drug courier. He had delivered two crates to people who were known to be drug distributors. And then also, when he was arrested, there was marijuana found in his house. And that was not found sufficient to be probable cause. Here, all there was was a brief transaction that supposedly took place. They didn't provide more information about what that happened. Did they do a traffic stop on this person who was known to be a drug distributor? All they knew is that it was a brief transaction. And that isn't sufficient to be lumped into this being a suspected drug transaction. I mean, the officer thought that it was, but he thought that because he thought Espinoza fit this pattern, but he didn't fit a pattern. This is a search warrant and not an arrest warrant. Correct. Because the arrest was found to be invalid. Correct. So but it's just the place. Did they sufficiently establish that this place was tied to drug trafficking? Right. And they did so based on a source of information. These people said that they thought that it was being used, but they didn't provide any information about where he came up with that information. So that's not. Okay. So even under your theory, though, at a minimum, they knew that there was a that was conducted by somebody who lived at that house. They knew they don't. They didn't know that they lived there. They knew that they went back to that house. They didn't say how this house was owned. Was it a B&B? Was it? I mean, all of the things that they said about this drug trafficking organization was that they moved places frequently. So if if Espinoza fit that pattern, then he would have been staying somewhere else. He wouldn't have staying at this place. I mean, if I'm in a B&B in Seattle and it just so happens somebody was tracked there from a drug transaction two weeks ago, I don't want the police officers breaking down the door and searching where I'm staying. I mean, that's basically all that they had. I understand that. But that's a different question from whether there would be probable cause. I mean, if there was if they knew that there had been a drug transaction and somebody had gone back to that place. I mean, obviously, there's a lot of facts that play into that. But that's all we're deciding here is whether there's probable cause. I mean. Right, right. My my point, though, is that they didn't do enough cooperation of what the independent source or the source said in order to be able to truly find probable cause that this apartment or B&B or within their assuming that I were to agree with you that their lack of probable cause. What do you do with the proposition that there's a good faith exception? The good faith exception does not apply if there was a bare bones affidavit, which is what I was arguing. And then also that based on the fact that there was not particularization in the in the affidavit and specifically on that, when you look at everything in the affidavit that he was requesting to be searched, he included phone records. He said that the affiant believes it's necessary to establish probable cause to obtain phone records requested. So he made a typo there, which shows that the magistrate didn't really truly read this affidavit. He asked for apps, but then he didn't ask for signal apps. What was the one that he said was so suspicious? He asked for Internet browsing history. And then finally, one thing that was really interesting was that he thought to be suppressed here, because when you file a motion as pressed, you have specific things in mind you want excluded. What are those? It was the drugs that were later located. OK, so we're not talking about cell phones or apps or that's not what's at issue in terms of suppression. No, I'm just arguing that this was a boilerplate affidavit and it didn't specifically tailor it to what they were actually looking for. And the final point on that was the documents that made aid in the identification and or current location of controlled substances. For instance, storage unit receipts. So they didn't even really know for sure that there would be drugs located in this apartment. And with that, I need to reserve the rest of my time. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court. Kelsey Sable from the District of Montana on behalf of the United States. On June 1st, 2021, law enforcement received information that someone tied to this drug trafficking organization had arrived in Billings, Montana, and they immediately identified this person as Espinoza. They immediately identified that he had a drug related criminal history. They immediately surveilled him to a suspected drug transaction with a known Billings drug distributor. And then they linked him to this Yellowstone Avenue address where just court found that there wasn't probable cause to arrest him. It found enough probable cause for the place, but not for him. Is that right? That is correct, Your Honor. We're not challenging the probable, the district court's finding on probable cause to arrest. You know, that's that's not before the court on appeal. But we do think that it is a little bit of a different question. You know, probable cause to search versus probable cause to arrest. You know, going to the to the discussion that was had earlier, the search warrant is to search this location, this residence. And there was extensive evidence that that drug trafficking or evidence of drug trafficking would be located at this residence based not only on the investigation into that extensive, there's one transaction that they do with the group of people in May and like the second to last week in May. And then they see Espinoza show up and do a suspicious transaction and then go there and then go out biking for groceries. That's really in terms of hard facts, all you have in this affidavit. That's true, Your Honor. I think there's a lot of take my word for it. Generalities. And I can't tell you the details, even though you're a magistrate judge, I can't tell you them because it would disturb the investigation. Well, Your Honor, I you know, it's true that there was information that the detective about the source that the detective did not include in the affidavit. Um, you know, and but that is, you know, the question is not whether there is more information that could have been included in the affidavit. The standard is whether the information that was included is sufficient to establish probable cause. You know, don't oversell. This is a pretty thin affidavit. Your office wouldn't do an affidavit like this. I would hope, Your Honor, the we agree the affidavit probably could have been written better and more detailed. Um, you know, but these are these are non law trained officers that are writing these and they're not drafted by, you know, legal technicians. Um, and the standard for probable cause is, you know, just whether a reasonable and prudent ordinary person, you know, would believe that there's a fair probability to of criminal activity and that evidence of criminal activity would be found at the place to be searched. And we think that this affidavit is sufficient for that based on the suspected drug transaction of Espinoza. Um, and this was, you know, he arrived in town. The law enforcement received information that he arrived in town on June 1st, and he immediately went and met with a known billings drug dealer. Um, and you know, this affidavit was signed on on June 2nd. So this this was immediately what he did when he arrived in town. He was staying at the address that they knew was linked to this drug trafficking organization from not only the source, but also from their independent investigation, their corroboration through the prior controlled by. And so when when applied to the fair probability standard, we feel that that is more than sufficient to establish probable cause, um, to search the residents. Um, and, you know, your honor, there was also some discussion about, um, this could be a coincidence or that, you know, this there could be innocent explanations for some of these things. Um, you know, but that is that's not the standard. I mean, the Supreme Court's case law on this point is clear that we do not take these, you know, individual facts in the affidavit and divorce them from from their context. We have to look at all of the facts in concert and in context, um, with all of with all of the circumstances to determine whether there's sufficient probable cause. You said that the affidavits put together by a non law trained police officer. Yes, yes and no. I mean, this is what they do for a living. You don't have to go to law school and take three years of law school to be trained in terms of what's necessary to put in an affidavit of probable cause. That is true. That is true, your honor. And I and I would just I would just like to make one more point on that. Um, you know, there there are some inferences in this affidavit. You know, we've discussed the suspected drug transaction that that that is sort of an inference that this meeting was it was a drug transaction. Um, you know, but this court held in Krupa that a which is cited in our briefs, um, that a law enforcement officer is entitled to rely on his training and experience to make reasonable inferences if they're supported by the underlying facts. And the Department, um, and has specialized all the more reason you can't say, well, he's not trained to do this. No, he knew his business. He did. He did, your honor. Um, you know, and but we do feel that he can rely on his training and experience to say that this this is a drug transaction. This is someone with a drug history meeting with a known drug dealer. Short meeting. This looks like a drug transaction. We feel that that's a fair and reasonable inferences from the circumstances, particularly given his recent arrival in billings. Um, you know, and and I, you know, I would also say, your honor, that even if the court were to to disagree that there was sufficient probable cause in support of this affidavit, given just the independent police investigation and the corroboration that was done here, that the good faith exception would certainly apply, that there's at least a colorable argument here for probable cause and that the such that it was reasonable for for this affiant to rely on the state court judges, um, determination that there was sufficient probable cause. Um, you know, I and I just wanted to briefly address help me understand how the good faith exception works. Let's say I'm a police officer. I present pretty sketchy information. I get myself a search warrant authorization from the magistrate judge. I'm now allowed to rely on the magistrate judges mistake of relying on the information that I did when I execute the search warrant. I mean, that search warrant, I get a good faith exception. Your honor, the good faith exception would apply if there was a colorable argument for probable cause in the affidavit, which we feel is is met here. You know, but if that's true, then the probable cause requirement never really exists because you can always rely on good faith so long as you manage to persuade a magistrate judge. Your honor, I would respectfully disagree with that. I think the standard is if if the affidavit was so bare bones and so lacking any indicia of probable cause, if if the if the affiant had said, well, we we believe that there's evidence of drug trafficking here because we heard it from the source period, that would be insufficient and the good faith exception would not apply to that. But that's let me state it more sort of cautiously then. But it still is. I understand your description of the good faith exception. I can present a close but inadequate case for a search warrant. I get the signing off of the search warrant. I'm good to go because I get the good faith exception. Your honor, I think that your position as to what the exception means. The our position as to what the exception means is is if there's a colorable argument for it, that a colorable argument for probable cause that the good faith exception does apply. One of the things I'm interested in here is do we have a search warrant applied for by officer X but then officer Y executes it. Is there a difference if officer X is not only the one who supplies the information but is also the officer involved in the execution? Your honor, I I mean, I I think I think there would only be a difference if the you know, if the officer conducting the search was not aware of the affidavit or the affidavit was not incorporated into the search warrant. And I there's been no argument that that's what we have here. I mean, this was this officer you know, was an officer on the task force. The task force executed the search warrant. So I I don't think that applies to to this case. Yeah, no, that's I think it's harder to get your exception here when the officer supplying the information that produces the search warrant is also intimately involved with the search itself. I understand the good faith exception. Officer X gets the search warrant. Officer Y not involved in getting the search warrant then executes. Well, your honor, I think that I think the good faith reliance is the reliance on the magistrate. So regardless of who of which officer or officers conduct the search, if they reasonably relied, if there was a colorable argument for probable cause in that affidavit, regardless of who submitted, if they relied on the magistrate's determination of probable cause, then the good faith, what I think that means is I mean, this this may be right, but what I think that means is that you can never require anything more than that. The that was close and the magistrate judge can make a mistake, but you still don't suppress because it was close enough for government work. Is that I think that's what your position results in. Your honor, I think under this court's case law, if it's if it's a close call, but there's a colorable argument for it and and the officer, you know, giving the great deference owed to the state magistrate judge, you know, the the good faith exception applies. I I think that's how the law stands. Okay. Thank you, your honors. Thank you. We'll hear a rebuttal. Excuse me. I'd like to point out that the good faith exception as this court is aware, the government has the burden of proving that it applies. It's not up to the defendant to argue that it doesn't. One of the things that keeps being repeated over and over again is that Espinosa had a drug history and I wanted to clarify. I didn't clarify it in my brief, but he had five drug paraphernalia convictions over the course of 4 years and one 7 year old solicitation to possess dangerous drugs and so he was not he didn't have a drug history of trafficking and that distinction is made very clear in Underwood. This case is very parallel to Underwood. The closer you read that because the Underwood case is the same thing where he supposedly had user amounts of marijuana and that wasn't sufficient to be an equating from a drug trafficker and a drug user. At best, the suspected drug transaction that the officer observed would say that I think it's important to remember why we have the exclusionary rule in the first place because it protects the rights afforded under the Fourth Amendment. We have to have a neutral detached magistrate stand between citizens and law enforcement engaged in the competitive process of ferreting out crime and drug task officers are very We have and we also have your briefs as well. So thank you for your argument today. Thank you to both counsel for your arguments. The case is now submitted.
judges: FLETCHER, NELSON, COLLINS